TIFFIN *v.* WHITMER.

[Cite as Tiffin v. Whitmer (1970), 32 Ohio Misc. 169.]

(No. 26899—Decided December 18, 1970.)

Municipal Court of Tiffin.

*Mr. Michael B. Lange,* assistant city solictor, for plaintiff.

*Mr. Arthur F. Graham,* for defendant.

TALBERT, J. The defendant was arrested on September 25, 1970, at 1:43 a. m., for unlawfully operating his motor vehicle on Miami Street, in the city of Tiffin, at a speed unreasonable for conditions. To wit: 51 miles per hour in a 25 miles-per-hour zone, contrary to the ordinance of the city of Tiffin, Section 73.1.

Section 73.1 prescribes a prima facie speed of 20 miles per hour passing school grounds at certain times; 25 miles per hour in all other portions of the city except on state routes, through highways outside business districts, and alleys; and 35 miles per hour on all state routes or through

highways within the municipality outside business districts. These same limits are also specified by R. C. 4511.21.

The evidence of the city concerning the speed of the defendant is derived from the use of a new device known of VASCAR (Visual Average Speed Computer Recorder). This instrument is supposed to measure the distance a vehicle travels and the time which it takes the vehicle to cover that distance. By using the mathematical formula of speed = distance over time, the unit computes the average speed of the vehicle over the distance measured and visually displays that speed to the operator. The accuracy and reliability of VASCAR has not yet been challenged and this is the first test of this device in the state of Ohio. Because the instrument is new, expert testimony as to the scientific principle, construction, operation, accuracy and reliability of the device must be established beyond a reasonable doubt. See *Jones* v. *Hawkes Hospital of Mt. Carmel*, 175 Ohio St. 503, 21 Ohio Jurisprudence 2d, 450, Evidence, Section 436.

The evidence of the city consists of testimony of a duly qualified expert who has supervised the development, manufacture and marketing of this device. The testimony of the expert established the following facts. The VASCAR unit is composed of four modules; an odometer module which measures distance, a switch module which is used by the operator to activate the time and distance measuring devices, a display module on which the resulting speed is displayed, and lastly, a computer module which records the distance, measures the time and divides the time into the distance.

The odometer module is connected to the speedometer cable of the vehicle in which the unit is installed. When the distance switch is activated the revolutions of the cable are transformed into impulses which are counted by the computer. In this manner the computer measures the distance traveled by the vehicle in which it is installed. The accuracy of the speedometer is immaterial. The important factor here is that the cable will be consistent in the number of revolutions per mile.

Time is measured by use of an oscillator which produces impulses at a rate of 170 each second. When the time switch is activated the computer counts the number of impulses and in this way it measures time. A voltage regulator in the computer insures the accuracy of the oscillator.

Based upon the various tests made of the equipment the court finds that the machine is an accurate and proper instrument for detecting speeding violations upon our streets and highways, if properly tested and used.

The expert gave the court considerable evidence concerning the extensive training and testing of VASCAR operators. The city satisfactorily proved that individuals are trained in such a manner that if the device is used as directed, it accurately measures the speed of a vehicle. The court recognizes that because of the human factor, it is impossible to measure exact speed. However, the evidence presented demonstrates that after proper training of VAS-CAR operators, human error results in a measurement error of less than one mile per hour.

The key to the accuracy of VASCAR is proof that the device was operated in such a way that it measures the distance an alleged violator travels and the time during which he travels that distance. The city is required to prove proper testing and use of the device.

Thus, the real issue here is whether, after testing the machine over an accurately measured course by an accurate stop watch on the day in question, Patrolman Brickner accurately measured the speed of the defendant by use of VASCAR.

The arresting officer, Ptl. Eugene Brickner, has successfully completed requisite training and his test results show his average error to be .475 of a mile per hour, well within the required two miles-per-hour variable. He is certified by the state of Ohio. His instructor, Sgt. C. E. Ireland of the Ohio State Highway Patrol, appeared and testified that in his opinion Ptl. Brickner is an accurate operator of VASCAR.

Ptl. Brickner's testimony concerning the testing of the machine is in the court's judgment sufficient and con-

vincing. Shortly before the arrest of the defendant, the device was tested on a measured course laid out by the city engineer and by a stop watch, the accuracy of which was tested by a local jeweler who used an electronic testing device.

Ptl. Brickner's testimony concerning his clocking of the defendant was clear and exact. He was parked at the City Garage off Miami Street in the city of Tiffin. The police car was positioned in such a manner as to be able to view the traffic as it passed two fixed points previously arranged. As the defendant's vehicle headed east on Miami Street, his left front headlights broke over the designated telephone pole at which time the officer flicked the time toggle switch on the control module. As the defendant's vehicle passed the second telephone pole, the officer flicked the time togle switch off and he observed a reading of 51 miles per hour. Despite intensive cross-examination by the defense, the officer testified that he did not miss any one of the reference points. Testimony was as follows:

"Q. Okay, could you give an opinion as to whether or not you were right on the point when you threw the switch? A. Yes, I was."

"Q. Was there any lapsation of time at all? A. None."

Therefore, the court finds that the average speed of the defendant's vehicle between the designated points was 51 miles per hour. Even allowing for the human-error factor, the speed of the defendant was in excess of the 25 miles per hour prima facie limit for this street. Nothing in the evidence indicates that a speed other than 25 miles per hour was reasonable under the conditions then and there existing.

The court finds the defendant guilty.